UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAVETTA JEAN ELIZABETH COKER,

    Plaintiff,

               Case No. 09-14299
v.              Honorable David M. Lawson

METROPOLITAN LIFE INSURANCE
COMPANY,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S ORAL MOTION TO AMEND COMPLAINT, GRANTING DEFENDANT'S MOTION TO AFFIRM PLAN ADMINISTRATOR'S DECISION, DENYING PLAINTIFF'S MOTION TO REVERSE PLAN ADMINISTRATOR'S DECISION, AND DISMISSING COMPLAINT WITH PREJUDICE**

  Lane H. Decker was employed by a subsidiary of Delphi Automotive Systems Corporation in June 2008 when he was diagnosed with small cell carcinoma of the lungs. When he transferred to the parent company in October of that year, he was treated as a new hire, which allowed him to enroll in the company's group life insurance program. The program is part of an employee benefit plan governed by the Employee Retirement Income and Security Act of 1974 (ERISA). The plan states that employees may elect basic life insurance death benefits in amounts equal to multiples of their salary plus optional amounts in multiples of $100,000. In Mr. Decker's case, he could elect up to $800,000 in coverage, but the plan specifically required elections over $600,000 to be supported by "proof satisfactory to the Carrier of the Employee's good health." Mr. Decker did not submit proof of good health; he could not have done so because of his lung cancer. But a human resources representative at Delphi mistakenly confirmed Decker's $800,000 life insurance election. Less than a month later, Decker's fatal disease took his life.

The underwriter, defendant Metropolitan Life Insurance Company (MetLife), paid the $600,000 death benefit but refused to pay the additional $200,000 because of the absence of proof of good health, as the plan required. Plaintiff Lavetta Coker, the beneficiary of Decker's life insurance policy, has brought the present action under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover the additional sum. The parties filed cross motions on the administrative record and the Court heard oral argument on November 15, 2011. The plaintiff has tried mightily to surmount the plan's clear requirement of proof of good health, insisting that Delphi's mistake effectively modified the plan, amounted to a breach of fiduciary duty, or estopped MetLife from denying coverage for the larger amount. However, the Court finds that the plain language of the plan must govern, and MetLife's refusal to pay the additional death benefit was not arbitrary or capricious.

I.

The following facts in this case are undisputed. Lane Decker had been employed by a subsidiary of Delphi since April 2, 2002. On June 9, 2008, Decker was diagnosed with upper lobe lung cancer. He was later diagnosed with, among other ailments, cardiomyopathy and Trousseau's syndrome, a paraneoplastic syndrome that causes migratory deep vein thrombosis. On October 1, 2008, Decker was transferred from the Delphi subsidiary to Delphi, and was therefore considered a new hire eligible to obtain optional life insurance (OLI) through the Delphi Life and Disability Benefit Program (the Plan). Decker completed an enrollment form and elected $800,000 in OLI on October 8, 2008. The enrollment form did not state that Decker needed to submit proof of good health in order to elect $800,000 in life insurance for himself, although it did state that proof of good health might be necessary for either the spouse or child life insurance he had elected. However, the

Plan required proof of good health as a condition of OLI coverage in excess of $600,000. Decker did not provide proof of good heath or complete a statement of health form. However, on October 20, 2008, Decker received a confirmation letter from Delphi stating that he had $800,000 in OLI benefits. Decker passed away on November 4, 2008. November 4, 2008 was also his last day of work at Delphi. On November 11, 2008, an insurance calculations document from the Delphi National Benefit Center stated that OLI coverage of $800,000 was payable.

On November 18, 2008, the plaintiff filed a claim for $800,000 in OLI benefits. The defendant reviewed the claim and approved payment in the amount of $600,000 in OLI benefits and $50,000 in basic life insurance benefits. The defendant conducted a post-mortem review of Decker's medical records to determine whether Decker could have provided evidence of good health when he made his OLI election. During that review, employees of the defendant acknowledged that because of his transfer status there had been some confusion as to whether a statement of good health was needed from Decker, but subsequently they determined that such a statement was indeed necessary. Upon review of Decker's records from Mount Clemens Regional Medical Center, the defendant concluded that because Decker had been diagnosed with lung cancer on June 9, 2008, he could not have provided proof of good health. Therefore, on June 11, 2009, the defendant denied the plaintiff's claim for the additional $200,000 in OLI benefits. On July 1, 2009, the plaintiff appealed this determination, citing the letter that Decker had received from Delphi confirmation that he was covered by $800,000 in OLI. On October 7, 2009, the defendant informed the plaintiff that the denial of her claim had been upheld, citing language in the Plan and Certificate of Insurance specifying that when OLI benefits in excess of $600,000 are elected proof of good health must be provided.

Two facts appear to be disputed. First, the plaintiff argues that Decker was never provided with a proof of good health form. In support of that proposition, the plaintiff cites an internal email by an employee of the defendant in which the employee stated that "POGH [proof of good health] was never requested from him. . . . No statement of health was provided or requested from the Benefit Center." AR 209. The plaintiff also notes that no statement of health form is included in the administrative record. The defendant states that during its investigation of the plaintiff's claim on appeal, it was told by Delphi that enrollment for life insurance is done online and that during the enrollment process a participant will be notified if proof of good health is required and the form then can be printed. Second, the plaintiff states that Decker did not receive a copy of the Plan or the enrollment brochure prior to enrolling for OLI benefits. The defendant does not directly contest that assertion, but neither does the defendant admit it. There is no evidence in the administrative record on that issue.

The Plan plainly states that proof of good health must be submitted in order to elect OLI coverage in excess of $600,000:

> Effective January 1, 2005, if an Employee elects an amount of Optional Life Insurance that exceeds $600,000 the Employee must furnish proof satisfactory to the Carrier [the defendant] of the Employee's good health. Insurance amounts in excess of $600,000 will become effective the first day of the calendar month next following the date the Carrier approves such proof.

AR 60-61. The enrollment brochure also highlights that requirement:

> If you elect an amount of Optional Life Insurance in excess of $600,000, proof of your good health will be required. The amount of Optional Life Insurance in excess of $600,000 will become effective on the first day of the month next following the date of approval of the evidence, provided you are actively at work. The amount of coverage equal to or below $600,000 will become effective on the first day of the month next following the date your election form is received.

AR 148. Finally, although the reverse side of the confirmation letter sent to Decker by Delphi is not contained in the administrative record, the plaintiff acknowledged in a letter to the defendant that the confirmation letter contained the following language: "No oral or written statements can change the terms of a benefit Plan or Program." AR 190.

II.

A few points are quite clear. First, as co-administrator of the Plan, MetLife was obliged to discharge its duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D); *see also McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir. 1990). Second, when interpreting the provisions of a plan, a plan administrator must adhere to the plain meaning of its language, as it would be construed by an ordinary person. *Callahan v. Rouge Steel Co.*, 941 F.2d 456, 459-60 (6th Cir. 1991). Third, the Plan provides the carrier, that is, the defendant, with "discretionary authority to construe, interpret, apply, make factual determinations, and administer the Plan," AR 18, which invokes the "arbitrary and capricious" standard of review. *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000) (stating that where "the benefit plan does grant such discretionary authority, the plan administrator's decision to deny benefits is reviewed under the 'arbitrary and capricious' standard of review"). Fourth, the Plan requires an employee to submit proof of good health before "Optional Life Insurance in excess of $600,000 will become effective." AR 148. Fifth, Mr. Decker never submitted proof of good health to Delphi or MetLife.

It is also clear that someone in Delphi's human resources department made a mistake in confirming coverage at the $800,000 level. That mistake apparently was carried forward when a

-5-

week after Mr. Decker's death, Delphi's benefits center stated its conclusion that $800,000 in death benefit was payable.

The plaintiff argues that the mistakes must govern the payment of the insurance claim in this case for three reasons: (1) the representation confirming that Mr. Decker had $800,000 in life insurance coverage effectively altered the terms of the Plan; (2) the "misrepresentation" as to coverage amounted to a breach of fiduciary duty that may have misled Mr. Decker, who may have believed he had that amount of coverage in place and therefore never sought additional coverage; and (3) MetLife should be equitably estopped from denying coverage in the additional amount and should be bound by Delphi's earlier representation as to the amount of coverage. The plaintiff also contends that MetLife's dual roles as plan co-administrator and payment source of the insurance benefits creates a structural conflict of interest supporting the conclusion that its decision was motivated by its own financial interest rather that the plan language and therefore was arbitrary.

It is not clear that all those arguments were raised in the complaint. However, they were fully briefed, and the defendant had no objection to the plaintiff's motion to amend the complaint to conform to the arguments raised in the cross motions, which the Court granted on the record.

A.

The parties agree that the arbitrary and capricious standard of review applies in this case. "The arbitrary or capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotation marks and citations omitted). An administrator's decision will be upheld under the arbitrary and capricious standard "if it is the result

of a deliberate, principled reasoning process, and is rational in light of the plan's provisions." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007) (internal quotation marks and citations omitted). A decision reviewed under this standard must be upheld if it is supported by "substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991).

The Sixth Circuit has acknowledged that "[w]hen the same entity determines eligibility for benefits and also pays those benefits out of its own pocket, an inherent conflict of interest arises." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). However, that court also held that existence of a conflict of interest can "shape" the application of, but does not change, the arbitrary and capricious standard of review. *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (holding that when the plan administrator has a conflict of interest, "the abuse of discretion or arbitrary and capricious standard still applies, but application of the standard should be shaped by the circumstances of the inherent conflict of interest" (citing *Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1561-63 (11th Cir. 1990))); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (a "conflict must be weighed as a factor in determining whether there is an abuse of discretion" (internal quotation marks and citations omitted)).

The Supreme Court reinforced the idea that a conflict of interest exists when a plan administrator both evaluates claims for benefits and pays benefits claims in *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105, 112 (2008). In that case, the Court instructed lower courts to consider a structural conflict of interest, but counseled that the weight accorded to that factor should vary depending on the circumstances of the case:

> The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that

> it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. . . . It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Glenn*, 554 U.S. at 117 (citations omitted).

The Court does not believe that MetLife's dual role played much of a part in the decision here. The plan administrator's task was to apply clear plan language to facts that largely were undisputed. The main issue arose from Delphi's mistake in reporting the amount of coverage. MetLife's assessment of the impact of that mistake does not appear to be distorted by the structural conflict that admittedly exists, and the plaintiff has not pointed to any evidence that it did.

The defendant's decision to deny an additional $200,000 in benefits was entirely consistent with the Plan's language, and therefore was not arbitrary or capricious in that respect. As the defendant notes, under the arbitrary and capricious standard of review, decisions that are "rational in light of the plan's provisions" must be upheld. *Daniel v. Eaton Corp*. 839 F.2d 263, 267 (6th Cir. 1988). A decision is "rational" if it is supported by "substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). In this case, the Plan clearly states that proof of good health must be submitted in order to qualify for benefits in excess of $600,000. That requirement is also stated in the Plan's enrollment brochure. There is no dispute that Decker did not submit proof of good health. Although that alone would likely be enough to uphold the plan administrator's finding under an arbitrary and capricious standard, the defendant did not base its denial solely on the fact that Decker had not submitted a necessary form. The defendant also attempted to determine whether Decker would have qualified for the additional coverage even

if he had submitted the form. Unfortunately, because Decker had been diagnosed with lung cancer four months before applying for the coverage, the defendant found that Decker could not have provided proof of good health and denied the plaintiff's claim on that additional basis. The defendant's determination that Decker could not have qualified for the additional $200,000 in OLI benefits because of his lung cancer diagnosis was supported by substantial evidence in the form of Decker's medical records.

The plaintiff argues that "good health" is not defined in the Plan or other related documents. But the discretion accorded the plan administrator includes the power to construe disputed terms, which "if reasonable, will not be disturbed." *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir. 1991) (citing *Firestone*, 489 U.S. at 111). And whatever one might conceive the term "good health" to mean, it cannot include one suffering from terminal lung cancer. Therefore, the defendant's decision to deny the additional $200,000 in benefits was rational in light of the provision in the plan requiring proof of good health and was supported by substantial evidence.

B.

The plaintiff acknowledges that the plan language requires proof of good health as a condition of qualifying for the additional coverage. However, she cites the confirmation letter by Delphi stating that Decker had $800,000 in confirmed coverage and argues that the confirmation form became part of the terms of the Plan that the defendant was required to consider when making its determination of benefits. In support of that proposition, the plaintiff cites *Ogden v. Michigan Bell Telephone Company*, 595 F. Supp. 961, 970 (E.D. Mich. 1984), in which the court stated that

there "*may be* circumstances in which employer representations and employee expectations define the terms of a benefit plan beyond the language in the document creating the plan." *Ibid.*

In *Ogden*, several Michigan Bell employees agreed to retire based on a representation by a management representative that enhanced severance benefits, available in the past, would not be offered again. That representation turned out to be false, and the plaintiffs who retired before the buyout program was reoffered were denied the severance benefits. The court viewed the severance benefits as a form of pension payment, which fell within ERISA. Those benefits were not described in the pension plan document, but the court looked to the statutory definition of "pension plan" when concluding that management's statement ought to be considered. Significantly, ERISA defines "pension plan" to include a plan or program providing retirement income "by its express terms or as a result of surrounding circumstances." 29 U.S.C. § 1002(2). The court was persuaded that statements not included in a pension plan document could be considered as part of the "surrounding circumstances" that defined the pension benefits of an employee.

The rights the plaintiff asserts here derive not from a "pension plan," but rather from an "employee welfare plan," which is not defined to include "surrounding circumstances" in addition to the plan language. *See* 29 U.S.C. § 1002(1). The court's analysis, therefore, is inapplicable to benefit plans such as the one in this case. The plaintiff's contention that the defendant was bound to consider the confirmation letter as part of the "surrounding circumstances" of the Plan is thus unsupported by applicable law. Delphi's mistaken confirmation of coverage at the $800,000 level cannot signal a plan modification. Written benefit plans are not so easily modified.. In fact, "[a] primary purpose of ERISA is to ensure the integrity and primacy of the written plans." *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997) (citing *Duggan v. Hobbs*, 99 F.3d 307,

309-10 (9th Cir. 1996); *Van Orman v. American Ins. Co.*, 680 F.2d 301, 312 (3d Cir. 1982)). Therefore, "federal courts may not apply common law theories to alter the express terms of written benefits plans." *Isbell*, 139 F.3d at 1072. The plan administrator's refusal to do so in this case was neither arbitrary nor capricious.

C.

The plaintiff also argues that the confirmation letter, coupled with Delphi's failure to disseminate the Plan or furnish other information that proof of good health was required, amounts to providing misleading information, which, in turn, constitutes a breach of fiduciary duty. That contention is derived from the plaintiff's assertion that *Ogden* requires the defendant to "look at the 'surrounding circumstances' involving the Plan" rather than merely looking at the Plan language. As discussed above, the plaintiff misreads *Ogden*. Moreover, the facts do not support her contention. As the plaintiff herself admitted in a letter to the defendant, the confirmation letter from Delphi explicitly stated that "[n]o oral or written statements can change the terms of a benefit Plan or Program." AR 190. That disclaimer should have alerted Mr. Decker to the possibility that in the event of a conflict between the confirmation letter and the terms of a Plan, the Plan language would control.

Further, the plaintiff's argument that the confirmation letter constituted a breach of the defendant's fiduciary duties does not fit the facts of the present case. The defendant did not send the confirmation letter, Delphi did. Indeed, there is no indication that the defendant was even aware of the confirmation letter before the plaintiff brought it to the defendant's attention in her notice of appeal. Although it is true that "misleading communications to plan participants . . . will support a claim for breach of fiduciary duty," *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154, 1163

(6th Cir. 1988), the plaintiff cites no authority endorsing the idea that the statement of a third party about which the defendant is unaware could support a finding that the defendant had breached its fiduciary duty.

D.

As the plaintiff conceded at oral argument, the notion that Mr. Decker may have been misled by Delphi's erroneous coverage confirmation letter is better addressed to the plaintiff's equitable estoppel argument. That argument, however, enjoys no better fate.

The Sixth Circuit has outlined the elements of a claim of equitable or promissory estoppel, which has been recognized as "a viable theory in ERISA welfare benefit actions":

> (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Moore v. LaFayette Life Ins. Co.,* 458 F.3d 416, 428-29 (6th Cir. 2006) (quoting *Sprague v. Gen. Motors, Inc.,* 133 F.3d 388, 403 (6th Cir. 1998)); *see also Marks v. Newcourt Credit Group, Inc.,* 342 F.3d 444, 456 (6th Cir. 2003). But the court emphasized that "[p]laintiffs cannot recover under an estoppel theory for misrepresentations which contradict unambiguous, written plan terms because their reliance on the subsequent representation would be unreasonable." *Moore,* 458 F.3d at 429.

The defendant argues that the Plan plainly and unequivocally requires proof of good health for coverage over $600,000, and therefore there can be no ambiguity and thus no misrepresentation. However, viewing the plan language together with the confirmation letter and the absence of a statement of health form in the administrative record could lead a reasonable person to confusion

-12-

over the requirement. Moreover, the enrollment form itself states that proof of good health may be required for dependent life insurance coverage but does not mention such proof for the employee. As the plaintiff notes, the lack of clarity also was evidenced by the initial confusion of the defendant's employees as to whether Decker was required to provide proof of good health.

The initial confusion was not created by MetLife itself, but it was caused by Delphi, the co-administrator of the Plan. A generous reading of *Moore* suggests that the first element of equitable estoppel — "conduct or language amounting to a representation of a material fact," *Moore*, 458 F.3d at 428 — can be found in this record. In *O'Connor v. Provident Life and Acc. Co.*, 455 F. Supp. 2d 670, 679 (E.D. Mich. 2006), the Court held that for the purposes of an equitable estoppel claim, an insurer can be made to bear responsibility for the misrepresentations of employers. The Court stated that although the defendant did not create or disseminate the misleading form in that case,

> it must bear some responsibility for communicating accurate information to plan participants since it had discretionary authority in administering the life insurance provisions of the plan. A fiduciary breaches his duty by providing plan participants with materially misleading information, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.

*O'Connor*, 455 F.Supp.2d at 679 (internal citations and quotations omitted). The confirmation letter confirms that Decker was covered by $800,000 in OLI, when in fact, because he had failed to provide proof of good health, the OLI death benefit could only be $600,000.

Next, the administrative record is somewhat equivocal as to whether the defendant can be said to have been aware of the true facts, that is, that Decker had not submitted a proof of good health form and was thus entitled to only $600,000 in insurance benefits. There is some evidence in the administrative record to suggest that the defendant believed that Decker was covered by $800,000 in OLI. *See* AR 209 (where an employee of the defendant stated that "[a]t the time of Mr.

Decker's passing he was showing in our system with $800,000.00 in coverage"). However, there is also evidence to suggest that at least some employees of the defendant were aware that Decker was covered by only $600,000 in OLI because of his failure to provide proof of good health. *Ibid.* (another of the defendant's employee stated that client services had provided that information). Therefore, the record supports a finding that the defendant was aware of the true facts.

But estoppel cannot be found because the plaintiff cannot establish the last three elements of the claim. There is no evidence in the administrative record to suggest that the defendant intended Decker or the plaintiff to rely on the confirmation letter provided by Delphi or intended "to prevent or discourage [Decker] from obtaining life insurance from other sources." *O'Connor*, 455 F. Supp. 2d at 680. Further, neither Decker nor the plaintiff could have reasonably believed that the defendant intended them to rely on Delphi's confirmation letter, because the letter contained its own disclaimer that "[n]o oral or written statements can change the terms of a benefit Plan or Program." AR 190. The plaintiff asserts that she and Decker were unaware of the true facts – that is, the requirement of proof of good health. The plaintiff states that there is no evidence in the record to demonstrate that Decker was provided with either the enrollment brochure or the Plan prior to making his election. However, the Sixth Circuit has previously found that *Sprague* creates no obligation upon insurers to make insureds aware of unambiguous Plan language. *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 522 (6th Cir. 2010).

Finally, the plaintiff cannot show detrimental reliance. Even assuming that the Plan language in this case was ambiguous and thus that it was possible for the plaintiff and Decker to rely reasonably on the confirmation letter, *see Moore*, 458 F.3d at 429, there is no evidence that Decker "actually was discouraged from obtaining other life insurance, or that he could have." *O'Connor*,

455 F. Supp. 2d at 680. Decker received the confirmation letter on October 20, 2008 and passed away on November 4, 2008. Even if Decker had sought out other life insurance immediately upon receiving the confirmation letter, it is not clear that he could have obtained other life insurance, especially given his recent lung cancer diagnosis. "Based on that information, it would have been reasonable for the plan administrator to conclude that [Decker] could not have furnished evidence of insurability to [the defendant] or any other insurer, and thus that there could be no detrimental reliance on the mistake in this case that resulted in foregoing an opportunity for additional coverage through another insurer. Such a conclusion is neither arbitrary nor capricious." *O'Connor*, 455 F. Supp. 2d at 680. Moreover, there is no evidence that the confirmation letter motivated Decker to refrain from furnishing proof of good health. As previously discussed, Decker could not have provided such proof, and any reliance on the confirmation letter on this point could not have been detrimental.

### III.

The defendant's decision to deny the plaintiff an additional $200,000 in OLI benefits was not arbitrary or capricious. It was based on clear language in the Plan requiring proof of good health for coverage above $600,000. Mr. Decker did not and could not have provided such proof. Delphi's reporting mistakes did not result in a modification of that plan requirement of a breach of fiduciary duty. There are not sufficient facts in the record favoring the plaintiff's equitable estoppel argument.

Accordingly, it is **ORDERED** that the plaintiff's oral motion to amend her complaint is **GRANTED**.

It is further **ORDERED** that the defendant's motion to affirm the Plan administrator's decision [dkt. #10] is **GRANTED**.

It is further **ORDERED** that the plaintiff's motion to reverse the Plan administrator's decision [dkt. #21] is **DENIED**.

It is further **ORDERED** that the complaint, as amended, is **DISMISSED WITH PREJUDICE**.

                                                s/David M. Lawson  
                                                DAVID M. LAWSON  
                                                United States District Judge

Dated: November 18, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 18, 2011.

                            s/Deborah R. Tofil  
                            DEBORAH R. TOFIL